IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BPI ENERGY HOLDINGS, INC., et al.**,  )
                                        )
       Plaintiffs,             )
                                        )
V.                                      )   Civil No. **07-186-DRH**
                                        )
**IEC, LLC, et al.**,                   )
                                        )
       Defendants.             )

# ORDER

**PROUD, Magistrate Judge:**

Before the Court is plaintiff BPI Energy's sealed motion to compel the defendants to fully respond to certain interrogatories and requests for production, falling into three broad categories of information: (1) information and documents regarding settlement negotiations conducted September 11, 2006, and February 9, 2007; (2) data regarding coal and/or coal bed methane ("CBM") rights on the Hillsboro or Osage property, which the defendants purchased from Exxon and which is subject to a confidentiality agreement; and (3) defendant Vandalia Energy Company, LLC's tax returns. In addition, plaintiff requests that sanctions be imposed by way of ordering the defendants to pay plaintiff's expenses and attorneys' fees associated with filing the subject motion. **(Doc. 72).**

The defendants generally respond, under seal, that: (1) *if* information and documents relating to settlement negotiations is relevant, the negotiations were subject to a confidentiality agreement, and evidence of settlement negotiations is inadmissible under Federal Rule of Evidence 408; (2) the "Exxon data" is irrelevant to the claims in this case, protected by a confidentiality agreement, and plaintiff should not be permitted to use this litigation to obtain

1

something for free that it was not entitled to during any relationship with the defendants. **(Doc. 80).** In response, plaintiff notes that this is not "third party" discovery of the settlement negotiations; the Exxon data pertains to damages and "confidential" does not mean "undiscoverable;" and plaintiff indicates the materials sought would be protected from further disclosure under the parties' agreed protective order. **(Doc. 85).**

### The Sealing of the Motion, Response and Reply

As a preliminary matter, the Court observes that plaintiff's motion, defendants' response and plaintiff's reply were filed under seal. The Court is unable to discern why the motion, response, reply and attachments warrant sealing, particularly since no protective order has been entered by the Court. The Court is not bound by the parties' agreed protective order. As the Court of Appeals for the Seventh Circuit stated in *Union Oil Company of California v. Leavell*, 220 F.3d 562, (7th Cir. 2000):

> Many a litigant would prefer that the subject of the case–how much it agreed to pay for a construction pipeline, how many tons of coal its plant uses per day, and so on–be kept from the curious (including business rivals and customers), but the tradition that litigation is open to the public is of very long standing. People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.

*Id.*, **220 F.3d at 567-568 (internal citations omitted).** Therefore, the Court will automatically unseal these documents on April 30, 2008, unless good cause is shown for keeping them sealed. In any event, **this** order will not be sealed, as it does not reveal anything that would warrant protection under the principles discussed in *Union Oil Company of California v. Leavell*.

### The Settlement Negotiations

2

By order dated November 13, 2007, this Court denied the defendants' motion to strike references to certain confidential matters in the Second Amended Complaint, including reference to the parties' confidential settlement negotiations. **(Doc. 58).** The Second Amended Complaint was not considered in contravention of Federal Rule of Civil Procedure 12(f), and Federal Rule of Evidence 408 was deemed inapplicable to the pleadings. Plaintiff's assertions to the contrary, that ruling, which pertained to striking material from the pleading, is not dispositive of the subject motion, which pertains to discovery. Therefore, the Court does not perceive any bad faith in the defendants' position.

Federal Rule of Civil Procedure 26(b)(1) permits the discovery of any matter relevant to the subject matter of the pending action, so long as the sought after information is not privileged, even if inadmissible at trial, if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. The Supreme Court has interpreted relevance broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. ***Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).**

The Third Amended Complaint **(Doc. 81)** alleges that the defendant Drummond affiliates attempted to void two April 2006 CBM leases by giving notice that the leases were in dispute, including the royalty rate. By all accounts, subsequent meetings on September 11, 2006, and February 9, 2007, were settlement negotiations which, by written agreement, were to be confidential, inadmissible in accordance with Federal Rule of Evidence 408, and not to be used or referred to for any purpose in any litigation. **(Docs. 80-2 and 80-3 Agreements between IEC (Montgomery) and BPI, extending to subsidiaries and affiliates).** Count Three alleges breach of contract relative to the September 24, 2004, Letter of Intent; and Count Four alleges breach of

contract relative to a purported Strategic Alliance Agreement, comprised of the Letter of Intent and an August 4, 2004, Memorandum of Understanding. According to the Third Amended Complaint, it was during the February 9, 2007, settlement negotiations that the defendant Drummond affiliates declared plaintiff in default, simultaneously filing suit in Birmingham, Alabama.

Counts Three and Four specifically reference the February 9, 2007, settlement negotiations (although the loose language used may actually refer to events occurring on February 9, 2007, and not the settlement negotiations themselves). Count Three alleges in pertinent part:

> 72. By their acts and conduct, the Drummond Affiliates waived the [Letter of Intent's] provision that contemplated an executed definitive agreement (<u>although they exist in any event</u>), and that stated that the [Letter of Intent] did not "constitute a binding agreement upon the parties."
>
> * * *
>
> 73. The Drummond Affiliates' actions in attempting to terminate the [Letter of Intent] on February 9, 2007, are an admission that <u>it</u> is binding, enforceable, and still in effect, an they are estopped from arguing otherwise.
>
> * * *
>
> 75. The Drummond Affiliates breached the [Letter of Intent] by refusing to honor the CBM Leases. The Drummond Affiliates further breached the [Letter of Intent] by attempting to terminate it on February 9, 2007.

**(Doc. 81, p. 18 (emphasis in original)).**

Count Four makes similar allegations regarding the Strategic Alliance Agreement, the terms of which are supposedly evidenced in the Letter of Intent and Memorandum of Understanding, which plaintiff contends were breached by the attempt to terminate the Letter of Intent on February 9, 2007. **(Doc. 81, p. 19, ¶ 80).** It is also noted that Count Six alleges breach of fiduciary duty, and Count Nine alleges tortious interference with contract.

Reading the Third Amended Complaint as a whole, it is clear that plaintiff is suggesting that the defendants entered into settlement negotiations in bad faith, and the confidentiality agreement was misused to insulate the defendants' improper actions. Plaintiff is trying to cobble together a contract using the Memorandum of Understanding, Letter of Intent and the defendants' actions, which include the settlement negotiations. Whether plaintiff will be successful is for Chief Judge Herndon to decide, but the negotiations are or may be an issue in the case. "'Where the settlement negotiations and terms explain and are a part of another dispute they must often be admitted if the trier is to understand the case. 2 Weinstein & Berger, Weinstein's Evidence P 408(5), at 27 (1981).'" ***Central Soya Co. Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982).**

Again, it must be stressed that the discovery of matters related to the settlement negotiations is far from the actual admission of that evidence. If discovery were not permitted, the Court and the parties could have to back-track and further delay the ultimate resolution of this action. Although the confidentiality agreements are only between BPI and IEC (Montgomery), by their terms, the agreements extend to all affiliates. Given the business relationship of the defendants and their joint defense in this action, discovery regarding the September 11, 2006, and February 9, 2007, settlement negotiations will only minimally violate the spirit of the agreement. Because plaintiff's legal theory could be rejected by Chief Judge Herndon, at this juncture every effort will be made to maintain the confidentiality of the settlement negotiations insofar as the general public is concerned. Any information exchanged through the discovery process regarding the September 11, 2006, and February 9, 2007, settlement negotiations shall not be disseminated beyond the attorneys and corporate

5

representatives involved in this litigation.

**The Exxon Data**

The defendants have refused to turnover data regarding coal and/or CBM on the Hillsboro or Osage property. The defendants purchased the data from Exxon at a cost of over $300,000.00, and the sale was contingent upon a confidentiality agreement. According to the defendants, the data could only be used for a particular project. The defendants contend the data is irrelevant to this legal action. Furthermore, defendants argue they are bound by the confidentiality agreement and plaintiff should not be permitted to use this litigation to obtain something for free that it was not entitled to during any relationship with the defendants. Plaintiff takes issue with the defendants for not asking Exxon for permission to share the data, which is possible under the terms of the confidentiality agreement with Exxon. (*See* **Doc. 72-24, p. 2; Doc. 80, p. 14).** Plaintiff contends the information is relevant to calculating its damages, i.e. the value of the coal and CBM on the Osage property.

Clearly, the value of the Osage property is relevant, in that it would be a component in the damages calculation if plaintiff were to be victorious in this litigation.

For purposes of Federal Rule of Civil Procedure 34, the data is in the defendants' "possession, custody and control." Defendants offer no suggestion of how the value of the property could be determined without the data. Nevertheless, the Court is mindful that the defendants are legitimately bound by the confidentiality agreement, but they have the power to seek Exxon's approval for the release of the data. The confidentiality agreement in this situation may turn out to be merely a minor impediment, not a shield, to discovery. Exxon may not object to releasing the data to plaintiff for use in this litigation (or perhaps releasing the data pursuant to

a confidentiality agreement), but defendant has not asked Exxon.

Without knowing Exxon's remaining rights over the data and its position regarding the release of the data for limited use in this action, the Court cannot assess the economic aspects of the situation and determine how to resolve this discovery impasse. Therefore, the defendants must make a formal inquiry of Exxon and relay that information to plaintiff. If a dispute remains, plaintiff shall file a second motion to compel. Costs and attorneys fees in association with a second motion may be assessed against the defendants, depending on the reasonableness of the parties' respective positions at that juncture.

**Vandalia Energy Company, LLC's Tax Returns**

Plaintiff seeks the tax returns of Vandalia Energy Company, LLC, in an attempt to explore the interrelationship between the defendants that are limited liability corporations and IEC and Drummond. The defendants indicate they have agreed to produce the requested tax returns, but it is unclear whether they have done so at this juncture.

In effect, the defendants have conceded that the plaintiff has a right to discover Vandalia Energy Company's tax returns. Therefore, if the defendants have not already done so, those tax returns must be turned over to the plaintiff.

**IT IS THEREFORE ORDERED** that, for the aforestated reasons, plaintiff's motion to compel **(Doc. 72)** is **GRANTED IN PART AND DENIED IN PART**.

1. No sanction, fees or costs will be assessed in connection with this motion.

2. On or before **April 30, 2008**, the defendants shall comply with plaintiff's discovery regarding the September 11, 2006, and February 9, 2007, settlement negotiations. Any information exchanged through the discovery process regarding the September 11, 2006, and February 9, 2007, settlement negotiations shall not be disseminated beyond the attorneys and corporate representatives involved in this litigation.

3. On or before **April 30, 2008**, the defendants shall ask Exxon, in writing, for permission to release the data regarding coal and/or CBM on the Hillsboro or Osage property to the plaintiff, contingent upon that information being used <u>only</u> for purposes of this litigation. Copies of the request and Exxon's response shall be forwarded to plaintiff. The written request to Exxon shall indicate that the Court requests its written response by **May 14, 2008**.

4. If the defendants have not already done so, on or before **April 30, 2008**, the tax returns of Vandalia Energy Company, LLC, shall be turned over to plaintiff.

**IT IS FURTHER ORDERED** that on **April 30, 2008**, the Clerk of Court shall automatically unseal plaintiff's motion to compel, the defendants' response, plaintiff's reply and all attachments **(Docs. 72, 80 and 85)**, unless good cause is shown for keeping the documents sealed. Any argument for keeping the documents sealed must be filed no later than **April 25, 2008.**

**IT IS SO ORDERED.**

**DATED: April 16, 2008**

<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**