IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BPI ENERGY, INC.,

    Plaintiff,

v.

IEC (MONTGOMERY), LLC, et al.,

    Defendants.                                                  Case No. 07-cv-186-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

## I. INTRODUCTION

Now before the Court is Defendants' Motion to Stay Pending Arbitration (Doc. 76). Although this case has proceeded through various stages of litigation, Defendants claim that it was not until Plaintiff filed its Third Amended Complaint (Doc. 81), which added a new cause of action for breach of the "Osage Letter Agreement" (Doc. 81, Ex. M), that provided Defendants with grounds for seeking a stay. Defendants assert that the Osage Letter Agreement contains a mandatory arbitration provision, which they now seek to enforce. Plaintiff opposes a stay pending arbitration, arguing that Defendants have waived their right to arbitrate in this suit (Doc. 89). Replying, Defendants contend Plaintiff's waiver argument (Doc. 93). For reasons discussed herein, unrelated to Plaintiff's waiver theory, the Court

finds it cannot grant a stay.

## II. **DISCUSSION**

### A. The Federal Arbitration Act

Defendants move for a stay pursuant to the Federal Arbitration Act ("FAA"), which requires district courts to enforce written arbitration provisions when elected by one of the parties. **9 U.S.C. §§ 1-16**. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**9 U.S.C. § 3**.

Section 4 of the statute provides, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

**9 U.S.C. § 4**.

The Federal Rules of Civil Procedure govern proceedings under the FAA only to the extent not provided for in the FAA itself. *See* **FED. R. CIV. P. 81(a)(3)**. Section 6 of the FAA provides: "Any application to the court hereunder shall be

made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." **9 U.S.C. § 6**. Accordingly, a court must review parties' motion papers under the relevant portions of the FAA, applying the Federal Rules of Civil Procedure as a supplement where the FAA is silent. *See Health Servs. Mgmt. Corp. v. Hughes*, **975 F.2d 1253, 1258 (7th Cir. 1992) ("Thus, the language of Section 6 preempts the applicability of the Federal Rules[.]")**.

Under the FAA, arbitration may be compelled if the following three elements are shown: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; (3) and a refusal to arbitrate. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, **466 F.3d 577, 580 (7th Cir. 2006)**; *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, **174 F.3d 907, 909-10 (7th Cir. 1999)**; *Olson v. Jenkens & Gilchrist*, **461 F. Supp. 2d 710, 726 (N.D. Ill. 2006)**. The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, **500 U.S. 20, 24 (1991)**. *See also Volkswagen of Am., Inc. v. Sud's Of Peoria, Inc.*, **474 F.3d 966, 970 (7th Cir. 2007) (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225 (1987)) ("The FAA was enacted in 1925 against the backdrop of 'centuries of judicial hostility to arbitration agreements.'")**. Before a court can

stay proceedings in favor of arbitration, it must decide whether the proceeding is "referable to arbitration" within the meaning of Section 3 of the FAA, and in making this determination the court "must consider only the issues relating to arbitrability." ***Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 807 (7th Cir. 2003) (citing *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 844 (7th Cir. 1999))**. Put differently, the court merely determines whether the underlying substantive disputes are, under the law, properly resolved in arbitration; if so, whether the various underlying claims and defenses are meritorious or not is not the subject of the court's analysis. ***See id.* (citing, inter alia, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967))**.

Whether parties have agreed to arbitrate is a question normally answered by a court rather than by an arbitrator, and the issue is controlled by state-law principles governing contract formation. ***See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Reliance Ins. Co. v. Raybestos Prods. Co.*, 382 F.3d 676, 678-79 (7th Cir. 2004); *Hill's Pet Nutrition, Inc. v. Fru-Con Constr. Corp.*, 101 F.3d 63, 65-66 (7th Cir. 1996)**. Nevertheless, in determining arbitrability a court should be mindful that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements" and "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"; thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" ***Moses H. Cone Mem'l***

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). *See also Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998) ("[O]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration."). While it is established that FAA policy favors the enforcement of valid arbitration agreements, Plaintiff cannot be compelled to arbitrate unless it has entered into a valid contract waiving its rights to a judicial forum. The Court turns now to address this issue.

**B.  Analysis**

  **1.  The Osage Letter Agreement**

Defendants state that the Plaintiff's cause of action for breach of what the parties refer to as the "Osage Letter Agreement," plead in Plaintiff's Third Amended Complaint, contains a mandatory arbitration provision which they now seek to enforce. Further, because of the federal policy favoring enforcement of valid arbitration agreements, Defendants believe the entire case should be stayed pending arbitration, pursuant to the FAA, as they believe all issues constitute a dispute within the scope of the arbitration agreement and it would eliminate the risk of inconsistent rulings between the Court and the arbitration panel. Lastly, arbitration may aid in resolving the issues remaining for litigation once arbitration was complete.

Conversely, Plaintiff points out that the federal policy favoring the enforcement of valid arbitration agreements does not hold in the face of a party's

waiver of the right to arbitrate. Plaintiff asserts that this suit has been subject to mandatory arbitration provisions prior to the filing of its Third Amended Complaint. Plaintiff continues that instead of seeking to arbitrate the matter when the suit was initially filed, Defendants proceeded to actively litigate this case, which amounts to waiver of their right to enforce arbitration (Doc. 89, p. 9, citing ***Ernst & Young, LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002)**; ***Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995)**). Plaintiff contends that Defendants have been aware of and have had access to the Osage Letter Agreement all along – in fact, Defendants were the ones who produced to Plaintiff as part of their discovery responses.

Plaintiff also notes that prior versions of its Complaint contained a cause of action for breach of what is referred to as the "Osage Lease." Plaintiff asserts that the Osage Lease also contains its own mandatory arbitration provision. According to Plaintiff, the Osage Letter Agreement specifically references the Osage Lease and "reflects the same exact promises of coal rights in exchange for the Osage Lease" that was part of the dispute from the very beginning (Doc. 89, p. 5). Thus, Plaintiff proffers that the Osage Letter Agreement must be read together with the Osage Lease, thereby making the Osage Letter Agreement subject to the arbitration provision of the Osage Lease. In sum, Plaintiff does not agree that Defendants' right to enforce arbitration only came about upon the filing of Plaintiff's Third Amended Complaint. Rather, it is Plaintiff's view that this right existed from the beginning and

therefore, Defendants have waived their right.

The Osage Letter Agreement, dated March 1, 2006, was made between Plaintiff and defendants IEC (Montgomery), LLC ("IEC"), and Christian Coal Holdings, LLC[1] ("Christian") (Doc. 81, Ex. M). Its contents constitute an agreement for Plaintiff to assign its right to acquire coal, coalbed methane and coal mine methane interests, located within the "Osage Reserves," to defendants IEC and Christian. In consideration for this assignment, IEC and Christian agreed "to enter into the lease attached hereto as Exhibit A" with Plaintiff, pursuant to which Christian agreed to lease Plaintiff its rights to coalbed methane ["CBM"] and coal mine methane ["CMM"] located within the "Osage Reserves" (Doc. 81, Ex. M). "Exhibit A" to the Agreement is the Osage Lease (*see* Doc. 93, p. 1). The remainder of the Osage Letter Agreement contains choice of law (Illinois), integration and arbitration provisions.

In particular, the arbitration provision reads:

> The parties agree that if they are unable to resolve any dispute arising out of or relating to this Agreement, such dispute shall be settled by arbitration in accordance with the rules and provisions then provided for by the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction.

(Doc. 81, Ex. M).

A plain language reading of this provision reveals a mandatory, rather than elective,

---

[1] Not all Defendants entered into the Osage Letter Agreement. However, Defendants note that Plaintiff's claim alleges that *all* of the Defendants *breached* the Osage Letter Agreement.

agreement to arbitrate. The parties do not dispute this. However, upon review of the Osage Lease, the Court finds the mandatory arbitration provision embodied in the Osage Letter Agreement to be void, the Osage Letter Agreement having been superseded by the Osage Lease.

### 2. The Osage Lease

#### a. Integration Clause

The Court must now turn to the arbitration clause in the Osage Lease, should one of the parties later elect to pursue arbitration pursuant to this clause, thereby again seeking a stay of these proceedings. The Osage Lease neither references nor incorporates the Osage Letter Agreement. Additionally, the Osage Lease contains an integration clause, which reads:

> 19. <u>Entire Agreement and Amendment</u>
>
>> This Agreement constitutes the entire Agreement between the parties and supersedes any and all other written or oral agreements or understandings between the parties concerning the subject matter hereof.

(Doc. 81, Ex. B, p. 22, § 19).

Illinois applies the "four corners" or parol evidence rule of contract interpretation, which bars consideration of extrinsic evidence when "the contract is facially unambiguous and contains an integration clause." ***TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.***, 491 F.3d 625, 636 (7th Cir. 2007) (citing ***Air Safety, Inc. v. Teachers Realty Corp.***, 706 N.E.2d 882, 885 (Ill. 1999)); ***see also Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products,***

***Inc.*, 212 F.3d 373, 380 (7th Cir. 2000) (finding that pursuant to parol evidence rule, integration clause stating that the contract between the parties "constitutes the entire agreement of the parties," and "supersedes all prior and contemporaneous agreements," barred consideration of related prior contracts or agreements) (citation omitted)**.

Upon review of the relevant exhibits, the Court finds that the Osage Letter Agreement was created as a precursor to the Osage Lease. In other words, it served as a safety net to protect the interests of the contracting parties, should one of them choose not to enter into the Osage Lease, in that it memorialized the parties' agreement for Plaintiff to assign its coal interests to Christian in exchange for Christian entering into the Osage Lease. In its Complaint, Plaintiff alleges that as consideration for its assignment of coal mining interests to Christian, pursuant to the Osage Letter Agreement, Christian agreed to enter into the Osage Lease by which it would lease to Plaintiff all of its rights to the CBM and CMM located in the Osage Reserves (Doc. 81, ¶ 67).

Plaintiff next alleges that the Osage Letter Agreement was breached by Defendants' refusal to honor the Osage Lease (*Id*. at ¶ 68). Alleging breach of the Osage Lease logically implies that the lease was entered into by the contracting parties. Otherwise, there could be no breach. Instead, if either BPI or Christian failed to sign the Osage Lease (or otherwise "enter" into it via performance), it would amount to a breach of the Osage Letter <u>Agreement</u>. Yet, such is not the case here.

While a Plaintiff can plead alternate theories of relief, the Court finds from examining Exhibit A to Plaintiff's Amended Complaint (Doc. 81, Ex. B) – the Osage Lease – that both parties have signed the Osage Lease. Moreover, the parties do not dispute that both BPI and Christian entered into the Osage Lease (*see* Third Amended Comp., ¶ 66). Nor do the parties raise the issue of contract vagueness or ambiguity to warrant consideration of extrinsic evidence; the Court also finds no occasion to consider it. In sum, the Osage Letter Agreement is not a stand-alone document that will survive the integration clause contained within the Osage Lease, because it most certainly qualifies as a prior written agreement between the parties "concerning the subject matter" of the Osage Lease. Accordingly, the Osage Letter Agreement and its mandatory arbitration provision is superseded by the Osage Lease.

### b. Arbitration Clause

The Osage Lease contains a provision entitled "Dispute Resolution - Arbitration" (Doc. 81, Ex. B, pp. 20-22, § 18).[2] When parties contract to include a right to arbitrate, whether mandatory or elective, either party may expressly or

---

[2] This arbitration provision states, in part:
> [A]ny unresolved dispute between or among any of the parties arising under this Agreement shall be attempted to be resolved by the following procedures. Such a dispute resolution procedure shall be initiated by any party giving written notice to the other parties of the matter in dispute. Within twenty (20) days after the delivery of a notice of dispute, the Chief Execute Officer or President of each of the parties, or their designees, shall meet at a mutually acceptable time and place to exchange relevant information and to attempt to resolve the dispute through good faith negotiations . . . . If the matter is not resolved within thirty (30) days after delivery of the notice to commence, **the parties shall be free to pursue arbitration** as set forth below to resolve the dispute.

(Doc. 81, Ex. B, pp. 20-21, § 18) (emphasis added).

implicitly waive this right. ***Ernst & Young, LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) (citing *Cabinetree*, 50 F.3d at 390)**. Presumably, filing suit in a "judicial forum" signifies the filing party's waiver of its right to arbitrate. ***Id.*** Determining whether waiver has occurred requires an analysis of the "totality of the circumstances" in order to decide whether the party seeking to enforce arbitration "has acted inconsistently with the right to arbitrate." ***Id.* (citing *Grumhaus v. Comerica Securities, Inc.*, 223 F.3d 648, 650-51 (7th Cir. 2000); *Iowa Grain Co. v. Brown*, 171 F.3d 504, 510 (7th Cir. 1999))**. A large part of this waiver analysis involves examining the diligence of the party seeking to enforce arbitration. ***Id.*** In other words, to quote ***Cabinetree***, "did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" ***Id.* (quoting *Cabinetree*, 50 F.3d at 391)**.

Clearly, by filing suit in this forum, Plaintiff did not elect to arbitrate its claims against Defendant for breach of the Osage Lease. Similarly, Defendants have not moved to enforce arbitration pursuant to the provision within the Osage Lease, nor do the parties assert that they made any good faith negotiation attempts in accordance with the Osage Lease arbitration provision (a requisite action under the provision before seeking arbitration). Rather, Defendants believe they "had no opportunity to move to stay this proceeding in its entirety pending arbitration prior to BPI's filing of its motion for leave to file the Third Amended Complaint" (Doc. 76,

p. 6).

Plaintiff believes the arbitration provision within the Osage Lease to be mandatory (*see* Doc. 89, pp. 11-13); Defendants do not. However, despite this disagreement, the Court need not draw a conclusion as to whether this arbitration provision is considered "mandatory" or "elective," finding that regardless, Defendants have waived their rights to arbitrate. In Count I of its Third Amended Complaint, Plaintiff sues for breach of both the Osage Lease and the "Hillsborough Lease" (collectively, the "CBM Leases") (Doc. 81, ¶¶ 1-64; Exs. A & B). Both CBM Leases contain identical arbitration provisions and were at issue in Plaintiff's initial Complaint, attached thereto as exhibits (Doc. 2, Exs. C & D). Since Plaintiff filed its original Complaint over a year ago, Defendants have proceeded to file dispositive motions and engage in various pretrial discovery, including several discovery disputes. Further, it appears Defendants previously filed a lawsuit in federal court in Alabama, seeking rescission of the CBM Leases (*see* Doc. 89, p. 3, n.2; Doc. 93, p. 2).[3] While moving to dismiss a case does not necessarily waive one's right to arbitrate, when considering the totality of the circumstances here, it is clear Defendants have acted inconsistently with their right to arbitrate under the provisions in the CBM Leases, whether such provisions are deemed to be mandatory. Thus, although the parties do not raise the issue of whether Defendants waived their right to enforce arbitration pursuant to the arbitration provisions found in the CBM

---

[3] Plaintiff states that this Alabama suit was dismissed for improper venue.

Leases, the Court finds the parties have waived these particular rights, in case this were to become an issue in subsequent proceedings.

### III. CONCLUSION

The Court is unable to stay the case to enforce the arbitration clause of the Osage Letter Agreement, as it finds the Osage Letter Agreement has been superseded by the integration clause within the Osage Lease. Therefore, the Osage Letter Agreement arbitration provision is void and unenforceable. Further, the Court finds that parties have waived their rights to enforce arbitration pursuant to the provisions in the CBM Leases. For these reasons, Defendants' Motion to Stay Pending Arbitration (Doc. 76) is **DENIED**.

**IT IS SO ORDERED**.

Signed this 21st day of May, 2008.

/s/   *David R Herndon*

**Chief Judge**
**United States District Court**