IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BPI ENERGY, INC., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. **07-186-DRH** |
| | ) | |
| **IEC (MONTGOMERY), LLC, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**PROUD, Magistrate Judge:**

Before the Court is plaintiff BPI Energy's sealed motion to: (1) compel the defendants to produce the transcribed statement of Kim Burke to the plaintiff, or for in camera review by this Court, to determine if the statement is protected attorney work product[1]; (2) compel the defendants to produce documents being withheld based on attorney-client privilege, where the only attorney involved is Bruce Webster, who is both an attorney and president of the IEC "LLC" defendants, so the Court can determine the applicability of the asserted attorney-client privilege; and (3) to compel the defendants to produce a more detailed privileged log for all other information being withheld based on an assertion of attorney-client privilege. **(Doc. 77).**

Defendants generally argue in their sealed response that: (1) Kim Burke's transcribed statement is protected by the work product doctrine, even though Burke's attorney was present

---

[1] Defendants initially asserted both attorney-client privilege and the work product doctrine relative to Burke's deposition. Plaintiff briefly refers to attorney-client privilege relative to Burke's deposition, but primarily focuses on the applicability of the work product doctrine. Defendants' response relies solely on the work product doctrine. The attorney-client privilege is clearly inapplicable, so the Court will only address the applicability of the work product doctrine.

1

while the deposition-style statement was taken; (2) the fact that Bruce Webster is general counsel for defendant Drummond Company, and simultaneously the sole corporate officer and general counsel for defendant IEC and all of the other "LLC" defendants, does not destroy the confidential nature of his legal communications with and among the defendant corporations; and (3) no cause has been shown for plaintiff's blanket condemnation of the defendants privilege log, which covers approximately 2,000 documents.  **(Doc. 86).**

Plaintiff BPI's reply generally stresses that it is the defendants' burden to establish the applicability of any privilege or protection.  **(Doc. 94).**

### Kim Burke

Kim Burke was the person with whom plaintiff had primary contact during negotiations at issue in this case– the Osage and Hillsboro coal bed methane leases between plaintiff BPI and defendants IEC and Christian Coal Holdings.  Burke's deposition was taken by outside counsel for defendant Drummond Company on October 16, 2006, while Burke was employed by Drummond Company as its vice president of mine engineering.  Burke's private counsel attended the deposition.  Plaintiff BPI seeks a copy of that deposition transcript.  Defendants claim protection under the work product doctrine.

Federal Rule of Civil Procedure 26(b)(3) provides protection from discovery for "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."    The work product doctrine serves as a qualified immunity from discovery, not as a privilege.  When this qualified immunity is overcome by a proper showing of substantial need, a court must still protect against disclosure of mental impressions, opinions, conclusions, or legal theories of the attorney or representative in regards

to the litigation. **Fed. R. Civ. P. 26(b)(3).** The doctrine is intended to provide a safe haven within which the attorney can analyze and prepare his or her client's case in anticipation of litigation. *See U.S. v. Nobles*, **422 U.S. 225 (1975).** The qualified immunity afforded by the work product doctrine may be waived. *Id.* What constitutes a waiver depends on the circumstances. *Id.* An unintentional or inadvertent disclosure of materials does not generally indicate a waiver of the work product protection. *See, e.g., Duplan Corp. v. Deering Milliken, Inc.,* **540 F.2d 1215 (4th Cir. 1976).**

> [T]he threshold determination in any case involving an assertion of the work product privilege, including this case, is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation. The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege; the privilege is not that broad. Rather, as the court stated in *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977):
>
>> "[T]he work product rule does not come into play merely because there is a remote prospect of future litigation.
>> In 8 Wright & Miller [Federal Practice & Procedure, Civil, Section 2024] it is said:
>
>>> ... Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." (emphasis added).

*Binks Manufacturing Co. v. National Presto Industries, Inc.*, **709 F.2d 1109, 1118 -1119 (7th Cir.1983).**

A review of the evidence presented and chronology of events reveals that Kim Burke's October 2006 deposition was taken during a time period when litigation was anticipated– at least by the defendants– even though all parties continued to negotiate before litigation was formally

3

initiated.  The August 25, 2006, letter from Bruce Webster on behalf of IEC-Montgomery and Christian Coal specifically gave notice to plaintiff that the leases were in dispute.  **(Doc. 77-2).**  The September 2006 confidentiality agreement entered into in connection with negotiations between the parties clearly reflects that litigation was anticipated if negotiations failed.  **(Doc. 80-2).**  And, although Bruce Webster's letter dated December 29, 2006, regarding a lease proposal suggested the new lease would allow the parties to move forward in their business relationship, plaintiff admits the proposal was unacceptable to plaintiff, at least without renegotiation of the coal sales transactions.  Nevertheless, all actions taken during a period when litigation is anticipated cannot be presumed to be attorney work product.

Defense counsel previously stated: "The purpose of this statement was to investigate and inquire about potential disputes and claims involving BPI . . . ."  **(Doc. 72-23, Exhibit V, p. 2).**  That vague description does not allow the Court to fairly say that the statement is related to the anticipated litigation about the leases.   However, defense counsel now clarifies that the statement was taken "in anticipation of this very ligation."  **(Doc. 86, p. 3).**  The circumstances precipitating the taking of Burke's deposition, counsel's clear statement regarding the purpose of the deposition, and the very fact Burke's statement was taken in deposition form, satisfy the Court that the deposition is attorney work product.

The fact that Burke's statement was taken in deposition form not only suggests that there was a very real possibility of litigation, it also leaves open the possibility that it was anticipated that the statement would be published in some manner in the course of litigation, which would negate the work product protection.  However, that tactical decision is not for plaintiff to make, and until such time that defense counsel decides to actually put Burke's statement to use, the

statement remains shielded by the work product doctrine. The presence of a court reporter cannot destroy the protection any more than would the use of a mechanical tape recorder. The presence of Burke's counsel does not destroy the protection either. It would not serve public policy to deprive a deponent who could be making statements with criminal implications to be deprived of counsel. Burke was an employee at the time of the deposition and not an adversary as plaintiff asserts. There is no indication that the statement was taken in anticipation of litigation with Burke, although such litigation may have been a possibility, given allegations that Burke was bribed by BPI to obtain favorable leases.

In any event, plaintiff can depose Burke, so there is no substantial need for allowing plaintiff access to Burke's statement. Relying on a notation that states, "Disappointed in your deposition in the BPI matter. Lots of things you did not remember," plaintiff asserts that Burke has a fading memory that will make a deposition now unreliable or incomplete. The Court reads the notation as sarcasm, not that Burke literally has a memory problem. The very next notation indicates Burke was essentially fired. (*See* **Doc. 77-4, p. 2).**

For the aforestated reasons, plaintiff's motion to compel the production of Kim Burke's October 2006 transcribed statement/deposition is denied, as it is work product protected by Federal Rule of Civil Procedure 26(b)(3).

### Bruce Webster

Plaintiff seeks to compel the defendants to produce documents being withheld based on attorney-client privilege, where the only attorney involved is Bruce Webster, who is both an attorney and president of the IEC "LLC" defendants, so the Court can determine the applicability of the asserted attorney-client privilege. From plaintiff's perspective, the defendants are

inappropriately cloaking every document that passed through Bruce Webster with the attorney-client privilege. Defendants assert that in every instance where attorney-client privilege is asserted relative to a document that passed by way of Bruce Webster, Webster was acting in his capacity as general counsel.

In *U.S. v. Evans*, 113 F.3d 1457 (7th Cir. 1997), the Court of Appeals for the Seventh Circuit indicated that it has long adhered to articulation of the attorney-client privilege set forth by well-known legal scholar Dean Wigmore:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id*. at 1461 (citing 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev.1961)).

> The purpose of the [attorney-client] privilege is to encourage full disclosure and to facilitate open communication between attorneys and their clients. However, because "the privilege has the effect of withholding relevant information," courts construe the privilege to apply only where necessary to achieve its purpose. The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements.

**U.S. v. BDO Seidman, 337 F.3d 802, 810-811 (7th Cir. 2003) (internal citations omitted).**

Among the essential elements of the attorney-client privilege are the requirements that the communication be made to the attorney in confidence, and that the confidences constitute information that is not intended to be disclosed by the attorney.**" *Id*. at 811 (internal citations omitted).** "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." **Upjohn Co. v. U.S., 449 U.S. 383, 390 (1981).** "'[T]he privilege protects

only the client's confidences, not things which, at the time, are not intended to be held in the breast of the lawyer. . . .'" **U.S. v. Weger, 709 F.2d 1151, 1154 (7th Cir. 1983) (quoting** *Clanton v. U.S.*, **488 F.2d 1069, 1071 (5th Cir. 1974)).**

As generally noted above, Bruce Webster acts as general counsel for defendant Drummond. Webster is the sole officer for defendants Vandalia Energy Company and IEC, the parent company of the LLC defendants. It is undisputed that, as the sole officer of those companies, Webster also acts as general counsel. Thus, it can be said that at times Webster undoubtedly wore "two hats"– sometimes simultaneously for multiple businesses. Under the "common interest" doctrine, an attorney can share information between multiple clients with a shared legal interest (regardless of whether there is actual litigation) without waiving the attorney-client privilege. *See U.S. v. Evans*, **113 F.3d 1457, 1467 (7th Cir. 1997);** *In re Sulfuric Acid Antitrust Litigation*, **235 F.R.D. 407, 416 (N.D.Ill. 2006) (offering an expansive discussion of the doctrine).** However, the nature of the communication must be closely scrutinized to separate Webster's business communications from his legal communications, as the attorney-client privilege is narrow.

Plaintiff argues that the defendants' privilege log does not provide sufficient information to enable plaintiff or the Court to discern whether the documents at issue that were passed through Webster fall under the protection afforded legal advice, or are, for example, merely business advice. After reviewing defendants' log, the Court agrees that it does not provide sufficient information to allow the applicability of the privilege to be adequately assessed, as required by Federal Rule of Civil Procedure 26(b)(5). The log is vague, conclusory, and has a boilerplate quality. For example, Document 2010 is described as: "Memo from General Counsel

7

regarding BPI;" and Document 2103, a "memo" by Bruce Webster to Garry Drummond, is described as: "Memo from general counsel sent in anticipation of litigation."

In *Kerr v. U.S. District Court for the Northern District of California*, 426 U.S. 394, 405 (1976), the Supreme Court recognized the worthiness and efficiency of in camera review in determining such disputes. Therefore, the Court will examine the 157 documents involving Webster:

> Log entries numbered 3, 9, 13-21, 23, 27, 30, 41, 42, 53, 61, 744-45, 1137-54, 1161-66, 1173-78, 1189-96, 1213-18, 1228-33, 1353, 1355, 1374-75, 1377, 1383-84, 1387, 1411, 1426-39, 1538, 1552, 1557, 1891-92, 2006, 2010, 2032, 2083, 2090-91, 2097, 2103, 2111, 2113-14, 2116, 2121-22, 2132-34, 2173, 2177, 2179-81 and from Defendants' Supplemental Privilege Log, (Ex. G), page 1, entries 6, 8-9, 24-26; page 2, entries 1-5, 7, 9, 20; page 3, entries 15-16; page 4, entries 9-10, 13-16, 26; page 5, entry 26; page 7, entries 3, 20-28; and page 8, entries 5, 8-15.

**The Privilege Log in General**

Plaintiff also challenges the sufficiency of the defendants' privilege log as a whole. Although Bruce Webster's dual role as attorney and corporate officer necessitates a close examination of the documents claimed to be protected by the attorney-client privilege, the remaining 2,000 or so need not be examined in camera. As discussed above, defendants' privilege log is, overall, insufficient to permit others to assess the applicability of the privilege and/or protection claimed.

In re-doing their privilege log, defendants should keep in mind the guidance offered in the Advisory Committee Notes to the 2006 Amendments to Federal Rule of Civil Procedure 26(b)(5)– the privilege log "should be as specific as possible in identifying the information and stating the basis for the claim.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel **(Doc. 77)** is

8

**GRANTED IN PART AND DENIED IN PART**, in that:

1. Defendants need not turn over to plaintiff the transcript of Kim Burke's October 16, 2006, deposition/statement, as it is protected under the attorney work product doctrine;

2. On or before **September 19, 2008**, defendants shall submit the following documents from their privilege log for in camera inspection by the Court for purposes of determining whether the attorney-client privilege is applicable:

> Log entries numbered 3, 9, 13-21, 23, 27, 30, 41, 42, 53, 61, 744-45, 1137-54, 1161-66, 1173-78, 1189-96, 1213-18, 1228-33, 1353, 1355, 1374-75, 1377, 1383-84, 1387, 1411, 1426-39, 1538, 1552, 1557, 1891-92, 2006, 2010, 2032, 2083, 2090-91, 2097, 2103, 2111, 2113-14, 2116, 2121-22, 2132-34, 2173, 2177, 2179-81 and from Defendants' Supplemental Privilege Log, (Ex. G), page 1, entries 6, 8-9, 24-26; page 2, entries 1-5, 7, 9, 20; page 3, entries 15-16; page 4, entries 9-10, 13-16, 26; page 5, entry 26; page 7, entries 3, 20-28; and page 8, entries 5, 8-15;

3. On or before **October 6, 2008**, defendants shall submit to plaintiff a revised, a more detailed privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5).

**IT IS SO ORDERED.**

DATED: September 11, 2008

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**